JESSE OWENS, Petitioner-Appellant, v. MICHAEL P. LANE, Director of the Illinois Department of Corrections, *et al.*, Respondents-Appellees.

Third District  No. 3—89—0406

Opinion filed April 5, 1990.

Sharon G. Kramer and Julius Lucius Echeles, both of Chicago, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Terence M. Madsen, Assistant Attorney General, of Chicago, and Douglas K. Smith, Assistant Attorney General, of Springfield, of counsel), for appellees.

JUSTICE WOMBACHER delivered the opinion of the court:

Petitioner sought, via *habeas corpus*, a judicial order to require the Illinois Department of Corrections (IDOC) to recalculate his proposed release date. The trial court dismissed the petition and denied the petitioner's motion for reconsideration. The petitioner appeals.

The facts are not in dispute. On June 25, 1966, the petitioner was convicted in Cook County of aggravated kidnapping and armed robbery. The petitioner was sentenced to concurrent terms of 30- to 40-year terms of imprisonment. On April 24, 1975, the petitioner escaped from Stateville Correctional Facility. On May 1, 1975, the petitioner was captured and later sentenced to a consecutive term of one to two years' imprisonment, to be served after expiration of the petitioner's original sentence. On November 23, 1979, the peti-

tioner was granted a two-year prerelease parole. On May 23, 1980, the petitioner's parole officer caused a warrant to be issued for petitioner's arrest, charging that he had absconded from his parole.

During the spring of 1981 the petitioner was charged by the Joliet police department with murder. On February 5, 1984, the petitioner was apprehended. He was tried on August 2, 1984, and acquitted of the murder charge. On September 22, 1984, the petitioner was again released on parole.

On July 9, 1985, the petitioner was arrested and charged with aggravated battery and knowing possession of a stolen motor vehicle. On December 16, 1985, the Illinois Prisoner Review Board revoked the petitioner's parole, making it retroactive to July 9, 1985. In October 1986, the petitioner was found guilty of aggravated battery and sentenced to four years in prison. The petitioner later pled guilty to knowing possession of a stolen motor vehicle and was sentenced to another four-year term to run concurrently with the four-year term for aggravated battery. From April 3, 1987, to the present the petitioner has been incarcerated with the IDOC.

One issue is raised on appeal. The petitioner alleges that the circuit court erred in denying the petition because he adequately demonstrated that the respondents incorrectly calculated his projected release date by refusing to credit him with time successfully spent on parole.

We note at the outset that the petitioner does not claim that he is entitled to *immediate release* from custody, but rather that the respondent has miscalculated his release date. The petitioner seeks to employ *habeas corpus* as a vehicle to have this court review the actions of the respondent.

■■ We are of the opinion that *habeas corpus* is not the proper remedy in this case. In 1987 this court stated, "[w]here the original judgment of conviction was not void, the petitioner's maximum prison term had not expired, and nothing had occurred to warrant the petitioner's immediate discharge, the trial court is without jurisdiction to grant *habeas corpus* relief." (*People ex rel. Stringer v. Prisoner Review Board* (1987), 163 Ill. App. 3d 1100, 1102, 517 N.E.2d 283.) In the instant case, the petitioner has failed to establish any of the three factors necessary for *habeas corpus* relief.

Although the petitioner cites *People ex rel. Yoder v. Hardy* (1983), 116 Ill. App. 3d 489, 451 N.E.2d 965, as authority for the proposition that *habeas corpus* is the proper remedy where the relief would entitle the petitioner to earlier, though not immediate, discharge, we find fault with the *Yoder* decision. The court in *Yoder*

seems to have assumed that *habeas corpus* was the proper remedy, citing *Taylor v. Franzen* (1981), 93 Ill. App. 3d 758, 413 N.E.2d 523.

A careful reading of *Taylor*, however, reveals that the petitioner in that case argued the propriety of granting relief *either* by means of *habeas corpus* or *mandamus*. The court in *Taylor* used *mandamus* as a remedy to compel prison officials to follow their internal rules. Therefore, *Taylor* does not stand for the proposition that *habeas corpus* may be used solely to reduce a sentence where immediate release is not possible and *Yoder*, then, is not persuasive or authoritative.

■ In the instant case, the petitioner requested only *habeas corpus* relief. He did not raise his request for relief in terms of either *habeas corpus* or *mandamus* relief. It is apparent after a reading of *Stringer* and *Taylor* that the relief sought by the petitioner cannot be granted through *habeas corpus*. If any relief is to be afforded, *i.e.*, if this court were to find that the respondents were not following statutory law or administrative regulations, the proper remedy would be one of *mandamus*.

Section 10—121 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 10—121) provides:

> "§10—121. Seeking wrong remedy not fatal. Where relief is sought under Article X of this Act and the court determines, on motion directed to the pleadings, or on motion for summary judgment or upon trial, that the plaintiff has pleaded or established facts which entitle the plaintiff to relief but that the plaintiff has sought the wrong remedy, the court shall permit the pleadings to be amended, on just and reasonable terms, and the court shall grant the relief to which the plaintiff is entitled on the amended pleadings or upon the evidence."

■ This type of case is not uncommon. We elect, in this case, to review the evidence and consider the arguments of the parties in an effort to clarify the calculation method utilized by the IDOC.

The IDOC calculates sentences by projecting a maximum out date and performing operations on that out date. Each day a prisoner serves in actual custody or lawfully on parole places him one day closer to the maximum out date.

When a prisoner is recommitted to prison after an unsuccessful attempt at parole, section 3—3—9(a)(3)(i)(A) of the Uniform Code of Corrections (Ill. Rev. Stat. 1987, ch. 38, par. 1003—3—9(a)(3)(i)(A)) provides, in pertinent part:

"[t]he recommitment shall be for any portion of the imposed maximum term of imprisonment or confinement which had not been served at the time of parole and the parole term, less the time elapsed between the parole of the person and the commission of the violation for which parole was revoked."

Pursuant to this statute, instructions for calculating the sentence of a recommitted parole violator are set out in IDOC Administrative Directive 01.07.446. This directive includes a calculation worksheet (see appendix A) on which a sentence is calculated by filling in the appropriate dates and adding or subtracting as directed.

In step 1(A), the amount of time the petitioner lost as a parole violator is calculated by subtracting the date the parole violation warrant was issued (May 23, 1980) from the date the petitioner was back in custody in the Will County jail (February 5, 1984). The petitioner, therefore, spent 3 years 8 months and 12 days as a parole violator.

In steps 1(B) and (C) additional parole violations may be calculated. In the instant case, the petitioner lost no time as a result of his second parole violation because he was placed in custody the day the violation occurred (July 9, 1985). Step 2, then, totals steps 1(A), (B) and (C). In the instant case, since step 1(B) was 0, the petitioner's total time lost as a parole violator was a total of 3 years 8 months and 12 days.

In step 3, line 1, the original custody date is recorded. In the instant case this date is June 25, 1966, the date petitioner began serving his original sentences. Next, the maximum sentence less statutory good time (SGT) is recorded. The petitioner's aggregate maximum sentence is 42 years—40 years for armed robbery and aggravated kidnaping in 1966 and 2 years consecutive for escape in 1975. SGT reduces this sentence to 22 years 3 months. (See 20 Ill. Adm. Code §107.120 (1985) (appendix B).) Adding 22 years 3 months to June 25, 1966, places the projected maximum out date at September 25, 1988. This date would be recorded at line 3 of step 3 of the worksheet.

Next, previous time lost is added to the maximum out date. In 1975 the petitioner escaped from prison for seven days. These seven days were not served and cannot count toward completion of the sentence. Therefore, seven days are added to the maximum out date. Thus, October 2, 1988, would be recorded at line 5 of step 3.

Next, because the petitioner violated parole and was reincarcerated after his second parole violation, his statutory parole term

is added to the maximum period of confinement. The petitioner's statutory parole term is two years. Two years added to October 2, 1988, is October 2, 1990. This would be recorded at line 7 of step 3.

Lastly, the time petitioner lost as a parole violator (3 years 8 months and 12 days) must be added to the maximum out date. This time was not lawfully "served" on parole and cannot be credited toward completion of the sentence. The time is added to the maximum out date so that the petitioner is no closer to discharge when he is recaptured than when he absconded. Adding this time to the previous maximum places the new maximum out date at June 14, 1994. This date would be recorded at line 9 of step 3.

From this date, June 14, 1994, further calculations for meritorious good time and compensatory good time are performed on a monthly basis. These calculations are done every month on a separate sheet. As these subtractions are made from the maximum out date, they are also made from the new parole date, the new parole date being six months before the maximum out date. Ill. Rev. Stat. 1987, ch. 38, par. 1003—3—10(b)(1).

The petitioner points to the language of section 3—3—9(a)(3)(i)(A) (Ill. Rev. Stat. 1987, ch. 38, par. 1003—3—9(a)(3)(i)(A)) and argues that the time he spent lawfully on parole from November 23, 1979, through May 23, 1980, and September 22, 1984, through July 9, 1985, was never subtracted from his maximum out date. As a result, the petitioner claims that he is being denied approximately 15 months 17 days off his maximum out date.

■ While it is true that under the IDOC's method of calculating a prisoner's discharge date, time successfully spent on parole is not *subtracted* from the discharge date, it is nonetheless accounted for because it is counted *toward* the discharge date. Every day that a prisoner is successfully on parole counts toward his eventual discharge from custody. Only when a prisoner absconds from parole or escapes from imprisonment is time added to the out date. The calculation employed by the IDOC, then, is just, fair, reasonable, and conforms with the requirements of the statute. Accordingly, we are of the opinion that the petitioner's claim is without merit, and we affirm the trial court's dismissal of his petition.

The decision of the circuit court of Knox County is affirmed.

Affirmed.

HEIPLE, P.J., and SCOTT, J., concur.

| Attachment | Number | Page Number | Effective Date |
|---|---|---|---|
| A | 01.07.446A-J | 4 of 4 | |

SENTENCE CALCULATION WORK SHEET

PAROLE VIOLATOR - STATUTORY GOOD TIME

NAME _____ NUMBER _____ DATE _____

(STEP 1) (A)

Yr.  Mo.  Day

-  _____
    (Recustody/New
    Sentence Date)
    (Date D.A.V.)
    (Time Lost as P.V.)

(STEP 1) (B)

Yr.  Mo.  Day

-  _____
    (Recustody/New
    Sentence Date)
    (Date D.A.V.)
    (Time Lost as P.V.)

(STEP 1) (C)

Yr.  Mo.  Day

-  _____
    (Recustody/New
    Sentence Date)
    (Date D.A.V.)
    (Time Lost as P.V.)

(STEP 2)

Yr.  Mo.  Day

+  _____
+  _____
    (Time Lost-1st Viol.-A)
    (Time Lost-2nd Viol.-B)
    (Time Lost-3rd Viol.-C)
    (Total Time Lost-P.V.)

(STEP 3) (MITTIMUS NO. _____)

MAXIMUM

Yr.  Mo.  Day

+  _____
    (Old Custody Date)
    (Max. Sent. Less S.G.T.)
    (Projected Maximum)
+or-
    (Previous Time -
    Lost/Awarded)
    (Projected Maximum)
+  _____
    (Stat. Parole Term)
+  _____
    (Projected Maximum)
    (Total Time Lost as P.V.)
-  _____
    (Projected Maximum)
    (Less Comp. Time
    as of          )
    (Projected Maximum)

(STEP 4)

FOR INDETERMINATE SENTENCES
WHERE 6 MONTHS MANDATORY
RELEASE APPLIES

Yr.  Mo.  Day

-  _____
    (Projected Maximum)
    (6 Months - M.R. Term)
    (Mandatory Rel. Date)

(NOTATION)

Yr.  Mo.  Day

-  _____
    (Recustody Date)
    (Rel. on Bond, Escape,
    Etc.)
    (Time Lost)

Proj. Maximum Date _____  Terminal Operator _____
Calculated By _____  Date Entered _____

DC 1346

1)    A committed person shall not be awarded compensatory good time
      for any month during which he is reported by his work/program
      supervisor for carelessness, negligence or refusal to work,
      providing such action is recommended by the facility's
      Adjustment Committee and approved by the Chief Administrative
      Officer or his designee.  No committed person shall lose any
      compensatory good time credits because he was unable to work or
      participate in a facility program through no fault of his own.

2)    Any committed person placed in segregation or confinement for a
      period of three days or more during a given month pursuant to a
      hearing before an Adjustment Committee shall not be awarded
      compensatory good time for that month.  However, no person shall
      lose compensatory good time for more than one month pursuant to
      such a hearing unless he is placed in segregation or confinement
      for at least 10 additional days during the second and subsequent
      months.

3)    Any committed person placed on investigative status shall
      receive compensatory good time for that month if the
      investigation findings indicate that the committed person did
      not commit a violation.

4)    Every committed person assigned to a community correctional
      center shall be credited with compensatory good time unless an
      Adjustment Committee finds that he has violated disciplinary
      rules.

5)    Any awarded compensatory good time may not be revoked.

e)    Good conduct credits, with reference to the minimum and maximum
      sentences, shall be calculated by awarding one day of good conduct
      credit for each day served for all committed persons sentenced on or
      after February 1, 1978, if such credit would be more beneficial than
      statutory and compensatory good time credits.  Determinate sentences
      entered on or after February 1, 1978, shall receive day for day good
      conduct credits.

FILED          Effective Date

JUL 31 1984      AUG 1   1984

SOS-ISL-CODE UNIT  SOS-ISL-CODE UNIT

Section 107.120   Good Time Schedules Applicable to Felony Sentences

a)   Statutory good time on indeterminate sentences, with reference to the minimum and maximum sentences, shall be calculated in accordance with the following table for persons sentenced prior to June 1, 1977, if the schedule contained in the table would be more beneficial than awarding day for day good conduct credits as of February 1, 1978.

Statutory Good Time Calculations for Those
Sentenced Prior to June 1, 1977*

| SENTENCE | TIME TO BE SERVED |
|---|---|
| 1st year | 11 months |
| 2nd year | 1 year and 9 months |
| 3rd year | 2 years and 6 months |
| 4th year | 3 years and 2 months |
| 5th year | 3 years and 9 months |
| 6th year | 4 years and 3 months |
| 7th year | 4 years and 9 months |
| 8th year | 5 years and 3 months |
| 9th year | 5 years and 9 months |
| 10th year | 6 years and 3 months |
| 11th year | 6 years and 9 months |
| 12th year | 7 years and 3 months |
| 13th year | 7 years and 9 months |
| 14th year | 8 years and 3 months |
| 15th year | 8 years and 9 months |
| 16th year | 9 years and 3 months |
| 17th year | 9 years and 9 months |
| 18th year | 10 years and 3 months |
| 19th year | 10 years and 9 months |
| 20th year | 11 years and 3 months |

*Agency Note:   On the maximum sentence, six months of good time is earned for each additional sentence year.

b)   Statutory good time on indeterminate sentences, with reference to the minimum and maximum sentences, shall be calculated in accordance with the following table for all persons sentenced to the Department of Corrections on or after June 1, 1977, but prior to February 1, 1978, for establishing the time credit for that portion of the sentence which was served prior to February 1, 1978.

**FILED**     Effective Date

JUL 31 1984     AUG 1  1984

SOS · ISL · CODE UNİOS · ISL · CODE UNIT